UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TONY TOOMBS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 1:14-cv-480-TWP-DKL |
| DR. MITCHEFF and DR. PERSON | ) ) ) |
| Defendants. | ) ) |

**Entry Discussing Motion for Summary Judgment**

Plaintiff Tony Toombs, an inmate of the Pendleton Correctional Facility ("Pendleton"), brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants were deliberately indifferent to his serious medical need for treatment for his gallstone and abdominal pain in violation of his Eighth Amendment rights. Defendants Drs. Michael Person and Michael Mitcheff move for summary judgment. For the reasons that follow, the defendants' motion for summary judgment [dkt 40] is **granted in part and denied in part**.

**I. Summary Judgment Standard**

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.,* 641 F.3d 253, 256 (7th Cir.

2011). To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Technical Grp.,* 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## II. Undisputed Facts

Consistent with the foregoing, the following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts are presented in the light reasonably most favorable to Mr. Toombs as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Mr. Toombs was transferred to Pendleton in August of 2013. At the time of his transfer, he did not report any medical complaints.

On August 21, 2013, Mr. Toombs was seen by Alana Brown, R.N. in response to his Health Care Request Form ("HCRF") in which he complained of right upper quadrant ("RUQ") abdominal pain which he reported as sometimes radiating to the left upper quadrant. Mr. Toombs described the pain as a dull ache that never goes away. He reported to Nurse Brown that he had a lengthy history of RUQ pain. The medical records reflect that Mr. Toombs has submitted multiple HCRFs complaining of abdominal pain that he perceived as being located in his liver, on both sides of his stomach, in his prostrate, in his colon and in his gallbladder. Mr. Toombs reported that

2

he had received prior blood work and x-rays related to his complaints of abdominal pain. Per his request, Nurse Brown referred him to a physician for further assessment of his complaints of abdominal pain.

On August 29, 2013, Dr. Wolfe saw Mr. Toombs to evaluate his complaints of bilateral abdominal pain. Mr. Toombs reported that he had experienced two years of pain on both sides of his upper abdomen that could not be diagnosed at his prior facility, Wabash Valley Correctional Facility. Mr. Toombs stated his pain was worse after eating and after bowel movements. Dr. Wolfe suspected constipation was the cause of Mr. Toombs' symptoms of abdominal pain. Dr. Wolfe's examination was negative for abdominal mass, blood in stool, diarrhea, heartburn, or nausea. Upon examination, Mr. Toombs reported minimal tenderness in both left and right upper abdomen. He was in no apparent distress, well-nourished and his vital signs were normal. There was no sign of abdominal distention, no enlargement of spleen or liver and no palpable masses. Dr. Wolfe ordered a kidney, ureter, bladder ("KUB") radiograph of the abdomen to evaluate the possibility of bowel obstruction, gallstones or kidney stones. The radiology report from the KUB procedure reported no abnormal abdominal findings.

On October 2, 2013, Mr. Toombs was seen by Dr. Clarkson at a chronic care visit to assess elevated blood pressure, elevated cholesterol level and continuing complaints of abdominal pain. Dr. Clarkson reported that Mr. Toombs described his abdominal pain as a musculoskeletal problem. Dr. Clarkson reviewed the findings in the KUB x-ray and recommended fiber and physical therapy in an attempt to alleviate Mr. Toombs' symptoms of abdominal pain. Dr. Mitcheff agreed with the request for physical therapy.[1]

---

[1] At this time, Dr. Mitcheff was the Regional Medical Director for Corizon LLC in Indiana. His involvement in patient care included the evaluation of requests for medical services and consultations that could not be provided on-

On October 29, 2013, Dr. Person saw Mr. Toombs for his complaints of abdominal pain. Mr. Toombs reported that the pain had been going on for several years and was worse with certain foods such as bread or bananas. Dr. Person reviewed Mr. Toombs' recent lab results which were normal. Mr. Toombs' vital signs were all normal. Dr. Person scheduled amylase serum and lipase serum tests to check pancreatic function as pancreatitis can be caused by gallstone disease. Dr. Person scheduled a follow-up appointment for when the lab results were received. At that time, Mr. Toombs was taking Mobic and Tegretol for pain related to leg injuries suffered from a 2003 gunshot wound.

On November 11, 2013, Dr. Person saw Mr. Toombs for a follow-up visit regarding his complaints of abdominal pain. Mr. Toombs stated the pain was continuing and was now in the left upper quadrant as well as the right upper quadrant. Dr. Person reviewed Mr. Toombs' latest lab reports, including the amylase serum and lipase serum tests for pancreatic function. All of his lab results were normal. Dr. Person noted that Mr. Toombs continued to complain of abdominal pain and stated that he had suffered from various forms of abdominal pain over a period of years. Nonetheless, Dr. Person noted that Mr. Toombs' presentation, body weight, vital signs, and lab results continued to be within normal limits.

That day, Dr. Person submitted a consultation request for a gallbladder ultrasound to further evaluate Mr. Toombs' complaints of abdominal pain. Dr. Person noted in the request that Mr. Toombs' labs were unremarkable, except for elevated cholesterol levels. Mr. Toombs had a positive response to Murphy's sign (pain when pressure placed on area where the gallbladder is located).[2] Dr. Mitcheff agreed with the request for an ultrasound. On November 11, 2013, Dr.

---

site at the correctional facility.
[2] The gallbladder is a small, pear-shaped organ under the liver. It stores bile, a fluid made by the liver to digest fat.

4

Person also submitted a non-formulary drug request for Neurontin as continuing treatment for neuropathic pain related to a 2003 gunshot injury to Mr. Toombs' right leg.

On November 12, 2013, an outside provider was contacted to perform a gallbladder ultrasound on Mr. Toombs. On December 6, 2013, an ultrasound image of Mr. Toombs' gallbladder and right upper quadrant was performed. The ultrasound findings stated a faint structure in the gallbladder was viewed that could possibly represent a single soft gallstone. There were no further signs of thickening of the gallbladder wall, no blockage of the bile duct, and no fluid around the gall bladder. There were no masses or enlargement of liver or pancreas. There was no buildup of fluid in the abdomen and no sign of inflammation. No further abnormalities were noted. Dr. Person concluded that the finding in an ultrasound of a possible small soft gallstone is not a clinical indication, on its own, for surgical removal of the gallbladder. According to Dr. Person, Mr. Toombs' history of complaints of abdominal pain in various areas such as upper right quadrant, upper left quadrant, radiating to buttocks, involving colon, liver and even prostate, without further clinical indications, did not reflect an emergent condition that required immediate surgical removal of his gallbladder. Dr. Person asserts that analgesic medication was appropriate to treat Mr. Toombs' pain and higher level pain medications were not indicated.

On December 23, 2013, Dr. Person saw Mr. Toombs for a chronic care visit to evaluate hypertension. Dr. Person noted that he had not yet received the final gallbladder ultrasound report

---

As the stomach and intestines digest food, the gallbladder releases bile through the common bile duct. Gallstones (cholelithiasis) are small stones—composed of cholesterol, bile pigment and calcium salts—that may form in the gallbladder. Gallstones are a common disorder of the digestive system, and affect around 20 per cent of people aged 40 years and over. In most cases, gallstones do not cause any problems and do not require treatment other than watchful waiting. Treatment may be indicated if gallstones block the bile duct causing complications such as inflammation of the gallbladder (cholecystitis) or of the pancreas (pancreatitis). Gallstones may temporarily obstruct the cystic duct or pass through into the common bile duct, leading to symptomatic biliary colic (pain related to gallstones). Signs of cholecystitis are nausea, vomiting, fever or pain in upper right quadrant of abdomen.

from Mr. Toombs' December 6, 2013 ultrasound. He also submitted a consultation request to continue Mr. Toombs' non-formulary prescription for Ultram to address pain that Mr. Toombs reported associated with a 2003 gunshot wound to his left leg. In his review, Dr. Mitcheff suggested the alternative treatment of acetaminophen.

On January 13, 2014, Dr. Person again saw Mr. Toombs for his continuing complaints of abdominal pain. Based on Mr. Toombs' lab results and ultrasound results—which reflected a possible single small soft gallstone—in Dr. Person's opinion, surgical removal of the gallbladder was not indicated at that time. Mr. Toombs had no clinical indications of acute cholecystitis. Dr. Person believed that Mr. Toombs' condition should be monitored rather than engaging in more invasive procedures.

On March 17, 2014, Dr. Person saw Mr. Toombs as Mr. Toombs was refusing all his medications including those prescribed for mental health disorders. Mr. Toombs repeated his complaint that his abdominal pain was not being addressed to his satisfaction. Dr. Person noted that Mr. Toombs and he had had multiple discussions concerning the fact that his lab results and ultrasound did not indicate the need for surgery to remove his gallbladder. Mr. Toombs insisted that he was not being treated properly for his gallbladder issues and requested further evaluation. Although Dr. Person felt that Mr. Toombs was over-reacting and that the symptoms reflected by his physical examination, lab results, and test results were consistent with watchful waiting and did not indicate immediate gallbladder surgery, based on Mr. Toombs request, Dr. Person prepared a request for a second opinion regarding Mr. Toombs' belief that immediate surgery to remove his gallbladder was indicated.

A thorough search of Mr. Toombs' medical records has not revealed a response to the March 17, 2014 request for consultation prepared by Dr. Person. Although Dr. Person does not

recall the outcome of the March 17, 2014 request for consultation, Dr. Person continued to believe that until further symptoms or medical evidence of gallbladder disease were present, surgery was not clinically indicated. Dr. Person believed that Mr. Toombs was exaggerating his pain.

On May 30, 2014, Mr. Toombs was seen by Nurse Jodie Murphy in response to his Health Care Request Form complaining of abdominal pain. Mr. Toombs reported that the pain started in his abdomen and radiated to his buttocks. He also stated that the pain sometimes started in his buttocks and radiated to the umbilical area. Upon examination, Mr. Toombs reported localized tenderness in RLQ.

After continued complaints from Mr. Toombs that his abdominal pain was not improving, Dr. Person again requested an outside consultation to have Mr. Toombs assessed for gallbladder surgery. The consultation request was approved and Mr. Toombs was referred for a surgery consultation on July 8, 2014. In his consultation report, the outside surgeon, Dr. Andrew Ritchison, diagnosed Mr. Toombs with biliary colic (pain related to gallstones) and recommended laparoscopic gallbladder surgery to address Mr. Toombs' complaints of pain.

On December 1, 2014, Dr. Person saw Mr. Toombs for follow up on his renewed complaints of abdominal pain. The medical records reflect that Mr. Toombs had been approved for gallbladder removal. However, the date had not been set, in part, because Mr. Toombs' family was reported as having made threatening calls to the surgeon who had evaluated Mr. Toombs. On December 5, 2014, Mr. Toombs was scheduled for laparoscopic outpatient surgery to remove his gallbladder.

On December 16, 2014, Mr. Toombs had outpatient laparoscopic surgery to remove his gallbladder. He returned to Pendleton the same day.

### III. Discussion

The defendants move for summary judgment arguing that they were not deliberately indifferent to Mr. Toombs' complaints of pain.

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 828 (7th Cir.2009) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). To state an Eighth Amendment claim based on deficient medical care, a plaintiff must allege an objectively serious medical condition and an official's deliberate indifference to that condition. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). Because there is no dispute that Mr. Toombs' alleged abdominal pain was sufficiently serious, the only issue is whether the defendants were deliberately indifferent to that pain. Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (plaintiff must show that officials are "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference."). The deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose, and is thus properly equated with reckless disregard. *Id.* at 836.

A court examines the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999). A prisoner's mere disagreement with a treatment decision is insufficient to establish deliberate indifference. *See Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014). To show deliberate indifference, the prisoner must demonstrate "that the treatment he received was 'blatantly inappropriate,'" *Id.* (quoting *Greeno v. Daley,* 414 F.3d 645, 654 (7th

8

Cir.2005)). Stated another way, that the treatment decision must "represent[] so significant a departure from accepted professional standards or practices that it calls into question whether the doctor was actually exercising his professional judgment," *Id.* (citing *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011). This has been found to include instances where medical professionals: delayed in treating pain from an objectively serious medical condition, *Grieveson v. Anderson,* 538 F.3d 763, 778 (7th Cir. 2008); refused to follow the advice of a specialist, *Gil v. Reed,* 381 F.3d 649, 663–63 (7th Cir. 2004); or failed to treat pain at a nominal cost. *Ralston v. McGovern,* 167 F.3d 1160, 1162 (7th Cir. 1999).

A. *Dr. Person*

Dr. Person argues that he was not deliberately indifferent to Mr. Toombs' need for treatment because the record reflects that he provided Mr. Toombs with consistent care for his complaints of abdominal pain. Dr. Person argues that he examined Mr. Toombs on multiple occasions, evaluated his condition, prescribed him with medication to treat his complaints, and arranged for diagnostic testing to rule out any potentially serious medical conditions. Mr. Toombs argues that Dr. Person was deliberately indifferent to his need for treatment because the medical records reflect that he did not receive treatment or pain medication for his abdominal issues for more than a year.

The evidence viewed in the light most favorable to Mr. Toombs shows that Mr. Toombs repeatedly complained to Dr. Person of abdominal pain from October 2013, when Dr. Person first evaluated him, until December 2014, when he underwent gallbladder surgery. While it may be true, as Dr. Person argues, that watchful waiting was an appropriate approach to Mr. Toombs' care, the Court finds that a reasonable jury could conclude that 14 months was too long to persevere in that course of treatment when Mr. Toombs continued to complain regularly of abdominal pain.

*See Berry v. Peterman,* 604 F.3d 435, 441-42 (7th Cir. 2010) (noting that prison healthcare staff may not persist with treatment they know to be ineffective when reasonable alternatives are available) (citing *Greeno*, 414 F.3d at 655); *see also Williams v. Liefer,* 491 F.3d 710, 716 (7th Cir. 2007) (defendants not entitled to summary judgment where delay in treatment may have exacerbated prisoner's pain). Further, while there is evidence in the record that Mr. Toombs was at times taking pain medication for his injured leg, there is little evidence presented regarding the evaluation, if any, that Dr. Person undertook to determine the efficacy of that medication for the abdominal pain other than Dr. Person's conclusory statement that analgesic medications were appropriate and higher level pain medications were not indicated. To the extent Dr. Person opines that Mr. Toombs was exaggerating his complaints of pain, this is not a fact that the Court can resolve at the summary judgment stage. Based on the fact that Mr. Toombs regularly complained of pain despite the medication he was taking and that an outside surgeon recommended gallbladder removal to treat Mr. Toombs' pain, the Court finds that a reasonable jury could conclude based on this evidence that Dr. Person was deliberately indifferent to Mr. Toombs' pain.

Because a reasonable jury could conclude that Dr. Person was deliberately indifferent to Mr. Toombs' need for treatment for his pain and gallbladder issues, Dr. Person is not entitled to summary judgment on Mr. Toombs' claims against him.

B. *Dr. Mitcheff*

Dr. Mitcheff also argues that he was not deliberately indifferent to Mr. Toombs' abdominal pain. In support of this argument, Dr. Mitcheff asserts that his only involvement with Mr. Toombs' medical treatment was 1) his agreement with the recommendation for physical therapy to assess possible constipation or musculoskeletal causes for his abdominal pain; 2) his agreement with Dr. Person's recommendation to schedule an ultrasound to investigate the cause of Mr. Toombs' pain;

and 3) his suggestion of the alternative medication of acetaminophen to treat Mr. Toombs' leg pain. Mr. Toombs has provided no evidence to the contrary. The undisputed evidence therefore is that Dr. Mitcheff denied Mr. Toombs a requested stronger medication on one occasion. Based on these minimal interactions, Dr. Mitcheff cannot be said to have been deliberately indifferent to Mr. Toombs medical needs. Accordingly, Dr. Mitcheff is entitled to summary judgment and Mr. Toombs' claims against him must be dismissed.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment [dkt 40] is **granted in part and denied in part**. The motion for summary judgment is **granted** with respect to the claims against Dr. Mitcheff and **denied** as to the claims against Dr. Person. No partial final judgment shall issue as to the claims resolved in this Entry.

A trial date will be set through a separate order. The Court *sua sponte* reconsiders its previous ruling denying the plaintiff's motion to appoint counsel (dkt 20) and finds that counsel would be beneficial to assist the plaintiff with trial. Accordingly, the Court will attempt to recruit pro bono counsel to represent the plaintiff at trial.

**IT IS SO ORDERED.**

Date: __1/4/2016__

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

TONY TOOMBS
913171
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel